**NOT RECOMMENDED FOR PUBLICATION**
File Name: 11a0862n.06

No. 10-1810

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Dec 20, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| Chadrick Jemail Griffin, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    Merritt, Clay, and Sutton, Circuit Judges.

**MERRITT, Circuit Judge.**  Defendant Chadrick Griffin was arrested in Grand Rapids, Michigan, and charged with one count of being a felon in possession of a firearm and three counts of intent to distribute narcotics.  He was subsequently convicted by a jury of the firearm charge and one of the drug charges and acquitted of the other two drug charges.  He now appeals his conviction, contending that the district court erred by (1) denying his request for new counsel on the morning of the first day of trial and in denying his request for a continuance to obtain new counsel; (2) permitting reference by a witness to his parole status in front of the jury; and (3) allowing his conviction for being a felon in possession of a firearm to stand because the felon-in-possession statute violates his Second Amendment right to bear arms.  After review of the record below, we find no reversible error and affirm the judgment of the district court.

**I.**

Defendant was arrested in the parking lot of "Michigan Works!", an employment office in Grand Rapids, Michigan, after police heard a broadcast over the police car radio that there was a white Pontiac G6 in the parking lot with a gun in it. The broadcast was issued after police dispatch received a 911 call saying someone had a gun in a white Pontiac G6 in the Michigan Works parking lot. Officers Gomez and Myers responded, finding a female in the driver's seat of a car matching that description. The officers saw a bullet or a cartridge on the floor of the car on the passenger's side and ordered the woman, Tyana Tyler, an ex-girlfriend of defendant's and the mother of one of his children, out of the car. Police found a plastic baggie containing about .57 grams of heroin after seeing a piece of plastic bag sticking out from a crack in the driver's seat. Ms. Tyler admitted to ownership of the car, but claimed to know nothing of the drugs. She consented to a search of the car, which later turned up a baggie containing 1.41 grams of cocaine in the trunk. Ms. Tyler informed the officers that the defendant had just exited the vehicle with her 8-year-old son and they had walked across the street to a Speedway gas station. Another officer, Officer Moe, found the defendant nearby with the boy. After reuniting with the other officers, the child showed Officer Myers a trash can where he claimed that the defendant had just thrown something away. Officer Moe found part of a baggie in the trash can. The child also told officers that he had witnessed defendant put something under the driver's side car seat and that the defendant had opened Ms. Tyler's car trunk while she was in a store.

Police then proceeded to the house of defendant's sister, where defendant had been staying in one of her bedrooms. The sister allowed officers to search defendant's bedroom where they found

a Glock 21 handgun below the bottom drawer of the dresser, ammunition for the handgun and two

"rocks" of crack cocaine in defendant's wallet, which was in a pair of pants. Defendant did not have

any drugs or a firearm on him when arrested.

Defendant was indicted on four counts: Count one charged him with being a felon in

possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e), and Counts two, three and

four charged him with intent to distribute narcotics, specifically heroin and crack cocaine, in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Defendant sought and was appointed counsel

and proceeded to trial. The jury convicted Griffin of the firearm charge (Count one) and the

possession of crack cocaine with intent to distribute (Count two), the two counts where the

government had introduced DNA evidence tying defendant to the contraband. Defendant was

acquitted of the two drug charges where no DNA match to defendant was found. Other facts relating

to defendant's appeal issues will be related as needed.

**II.**

**Defendant's Request to Obtain New Counsel**

**A. Motion for Continuance to Obtain New Counsel**

A court-appointed attorney, Jeffrey O'Hara, was appointed to represent defendant in January

2010, after the federal charges were filed. At that time, defendant neither requested nor claimed that

he could afford retained counsel. On the morning of the first day of trial, the court session began out

of the presence of the jury pool. The district judge began by ruling on several recently-filed motions.

Defense counsel then indicated that his client wished to address the court. The exchange between

Griffin and the judge went as follows:

DEFENDANT GRIFFIN: Your Honor, I would like to ask the Court if I can have this trial date postponed to get a different attorney because my attorney is not fighting for my life the best in my interests, [sic] and I've been misleaded [sic] and I just feel that my lawyer has not been counseling me right, Your Honor.

THE COURT: Specifically what?

DEFENDANT GRIFFIN: Several reasons, Your Honor. there's been a lot of – this has been like arguing. We ain't never talked about nothing positive about my case. He just trying to get me to plead guilty, telling me I'm not gonna win my trial. It's been a lot of other – more stuff than just that.

THE COURT: Well, you're having a trial. You're not pleading guilty. You've entered a not guilty plea. . . . I don't think the rest of those discussions are relevant. He has an obligation, whether you realize it or not, to discuss with you any offers the government makes to compromise this matter by a plea. If he doesn't tell you about it . . . and if he doesn't explain that to you, then he has failed his professional responsibility. . . . If he doesn't make a recommendation to you one way or another, he has failed his professional responsibilities.

Trial Tr. Vol. I, pp. 7-8. The district court judge goes on to explain to defendant that his counsel, Mr. O'Hara, prepared very well for the trial and filed many documents in anticipation of trial and that he "is one of the best court-appointed lawyers I can possibly give you. I have seen nothing that he has done that has in any way evidenced the fact that he can't fairly and rigorously and professionally represent you." Trial Tr. Vol. I, p. 9. The discussion continues:

DEFENDANT GRIFFIN: Yes, Your Honor, I understand that. And, Your Honor, I just would like to say that I feel that the only way I'm gonna have a fair trial is if all the evidence is in, and from what I was seeing last week, that all the evidence was not gonna be into court.[1]

---

[1]This reference concerns the admission of the 911 tape received by the Grand Rapids police dispatch about a gun in a car that sent the officers to the Michigan Works! location where defendant was arrested. Although the district court initially ruled that the tape was not admissible, the tape was in fact admitted over the government's objection and played for the jury.

THE COURT: You're not a lawyer. . . he's a lawyer. He represents people such as yourself on a regular basis . . [i]n this court, in federal court. . . And I've never seen him not do his very best, and so I think you and your family can relax on this one. Not relax, but what I mean is you need not be concerned. . . . You have to understand that your lawyer has to present to you the good, the bad, and the ugly. [The judge continues to explain to defendant that he would not want a lawyer who tells him what he wants to hear, he wants a lawyer to tell him the truth.]

DEFENDANT GRIFFIN: Yes, sir, Your Honor. But to tell me I'm not gonna even win my trial?

THE COURT: You know, again, I don't know what he has told you and I don't know the context he told you and I don't want to interfere with that. But what I'm telling you is you are entitled to an honest appraisal from him of what he believes the evidence might show. I'd rather have him tell you that than have him say, Mr. Griffin, all we have to do is to appear here and I'll knock the stuffing out of the U.S. Attorney and all the witnesses and we'll just walk out of here and the sunshine will be out and it will be just wonderful. . . .If you told me that he said that to you, I would say you need a new lawyer. . . . Okay, I don't see any reason for us to – you're not paying for him. He's being provided for you at public expense, and when you were charged and the CJA panel person who evaluated this matter appointed Mr. O'Hara, they did that with the knowledge that you were getting one of the best lawyers we have here in West Michigan. . . .

DEFENDANT GRIFFIN: So there's no way I can get a different attorney?

THE COURT: No. I mean, you haven't written to me. I never heard about this until you just got up right now.

DEFENDANT GRIFFIN: Yes, sir, your Honor. I didn't know that this was going to trial at this time, Your Honor.

THE COURT: Right. Didn't we have a pretrial here about 10 days ago?

DEFENDANT GRIFFIN: A week ago, last week.

THE COURT: Okay, a week ago. Did you tell me anything at that time?

DEFENDANT GRIFFIN: No, sir.

Trial Tr. Vol. I, pp. 9-12.

On appeal, Griffin argues that he was denied his right to retain counsel of his choice when the district court denied his motion for a continuance so that he could get a new lawyer. There are two distinct, yet related, complaints presented by defendant: the denial of a continuance so that he could retain new counsel and the denial of his right to counsel of choice, a Sixth Amendment violation. The dialogue between the defendant and the district court answers defendant's argument.

The request for a continuance to seek new counsel was not presented to the district court until the morning of the first day of trial. The court had held a pretrial conference the week before, with defendant in attendance, and there had been no objection to the quality of Mr. O'Hara's representation at that time. There is nothing in the record prior to March 15, 2010, indicating that there was any problem at all between Mr. O'Hara and the defendant. There is no dispute that defendant knew the date of trial. He conceded the fact to the district court when he acknowledged that he was at the pretrial hearing the week before the trial began. In addition, the trial would likely have been unduly delayed had the request been granted because defendant gave no indication when questioned by the district court that he had a retained attorney waiting in the wings to step in immediately and the record does not otherwise indicate that this was the case.

The district court questioned defendant at length as to why he wanted a new attorney. Defendant told the court he was in disagreement with his counsel because his counsel wanted him to enter a plea instead of go to trial. The district court correctly pointed out that appointed defense counsel was simply doing his job in making clear to defendant the weaknesses in his case. Based on this information, the district court reasonably concluded that defendant was being provided with effective representation by his appointed counsel and that defendant's ability to receive a fair trial

was not prejudiced by remaining with his current court-appointed counsel. The case did go to trial, as defendant wished, and, in hindsight, his counsel represented him well, achieving acquittals on two of the four counts and managing to get the district court to reverse its ruling on admissibility of the 911 tape to allow it in, one of the primary points of disagreement mentioned by defendant in his exchange with the court the morning of trial.

Despite the fact that the defendant says in his appellate briefs that the district court did not understand that defendant was seeking a continuance to obtain retained counsel to replace his court-appointed counsel, he never said that to the district court. Defendant was given ample opportunity by the district court to speak and he never mentioned wanting to retain his own counsel. Nor had any attorney filed an appearance or made a motion for substitution of counsel. It was the morning of the first day of trial and it was the first time the defendant had let the court know that he was unhappy with his attorney. Accordingly, given the timing of the motion in this case and the lack of any evidence of a material conflict between defendant and his court-appointed counsel, we conclude the district court did not abuse its discretion in refusing to delay the trial. *See United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010).

**B. Sixth Amendment Right to Counsel of Choice**

Defendant also argues that the denial of his motion for a continuance to substitute retained counsel for his court-appointed lawyer violated his Sixth Amendment right to counsel of choice. The amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," and the Supreme Court has concluded that language encompasses a defendant's right to "choose who will represent him." *United States v.*

*Gonzalez-Lopez,* 548 U.S. 140, 144 (2006). We are guided by the common-sense principle that the right is "not absolute," and it "does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case." *United States v. Robinson,* 20 F.3d 270, 275 (7th Cir. 1994) (citations omitted).

As explained above, the conflict between defendant and his court-appointed counsel stemmed primarily from counsel's failure to paint a rosy picture of defendant's chances for full exoneration at trial. As the district court told defendant, counsel – whether appointed or retained – had an obligation to advise him truthfully . The fact that defendant's lawyer did not tell him what he wanted to hear about his chances of success does not qualify as the type of serious conflict that results in a total lack of communication preventing an adequate defense. Given the delay that would have likely resulted, defendant did not demonstrate good cause to obtain retained counsel.

## II.

### Testimony Revealing to Jury that Defendant Was on Parole

The defendant next argues that his right to a fair trial was compromised when his status as a current parolee was revealed to the jury through a police officer testifying for the government. He argues that the reference was unfairly prejudicial and, therefore, inadmissible under Federal Rules of Evidence 403. The reference to his parole status was heard by the jury when Officer Myers testified that due to defendant's status as a parolee, a warrant to search defendant's room was not necessary, thereby allowing the officers to go directly from the Michigan Works! parking lot to Griffin's sister's house. Trial Tr. Vol. 1, pp. 116-17.

The jury was already well aware that the defendant had a felony conviction because Griffin was being prosecuted under 18 U.S.C. § 922(g)(1), which prohibits convicted felons from possessing firearms. Griffin stipulated to his status as a convicted felon and that stipulation was read to the jury. "[W]here the government is required to prove as an element of the offense that the defendant has previously committed a felony, as in a [felon-in-possession] prosecution, the potential for prejudice [from the jury hearing evidence of parole status] is substantially lessened." *United States v. Griffin*, 389 F.3d 1100, 1103-04 (10th Cir. 2004).

In addition, the error that resulted from the jury hearing about defendant's parole status was harmless. *See Chapman v. California,* 386 U.S. 18, 24 (1967). The evidence of guilt was overwhelming. Defendant's DNA was found on both the firearm and the baggie containing the cocaine recovered from Tyana Tyler's trunk. The gun was found in defendant's bedroom, a room that also contained his wallet and other identification and personal items. His sister testified that the gun did not belong to her and that defendant was the only other occupant of the home and that defendant's bedroom was not used by anyone else. As for the cocaine, in addition to the DNA evidence, it was retrieved from the trunk of a car in which defendant had been recently riding and a witness testified that he saw defendant put something in the trunk shortly before it was found by police. The cocaine was also packaged similarly to the cocaine found in defendant's wallet in his bedroom. Even without the improper statement by Officer Myers about defendant's parole status, the proof of defendant's guilt on the gun and cocaine charges is overwhelming.

**C. The Constitutionality of the Federal Statute Prohibiting Felons from Possessing Firearms**

Defendant concedes that we have previously held that prohibitions on the possession of firearms by felons do not violate the Second Amendment. *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (citing *Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)). Defendant's citation to *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), does not impact our holding in *Carey*. The petitioners challenging Chicago's gun control laws were not convicted felons.

For the foregoing reasons, we affirm the judgment of the district court.