NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0567n.06

No. 15-2386

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 12, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern District |
| JAJUAN MARTINEZ LEWIS, | ) | of Michigan |
| | ) | |
| Defendant-Appellant. | ) | |

_____/

**Before: GUY, BOGGS, and GRIFFIN, Circuit Judges.**

**PER CURIAM.** Defendant JaJuan Lewis was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant challenges the sufficiency of the evidence to establish that he actually or constructively possessed the firearm, and argues that the district court abused its discretion by allowing two probation officers—one federal and one state—to testify during trial. Finding no merit to either contention, we affirm.

**I.**

On December 12, 2011, Detroit police officers executed a search warrant for evidence of theft of utility services at 16500 Collingham Street in Detroit, Michigan. A raid team approached the house, knocked and announced themselves, and made forcible entry through the

front door when no one responded. After entry, the officers heard rustling noises from upstairs and called out for whoever was up there to come down. Lewis appeared on the landing wearing boxer shorts and a t-shirt and walked down the stairs.

Three officers swept the upstairs, which was all one bedroom with a large bed that appeared to have been slept in, and found no one else up there. One of the officers noticed a small waste basket about 12 inches wide and 8 inches tall in which he spotted a handgun pointing down with the handle up. The waste basket was located by the corner of the bed about 8 to 10 feet from where Lewis was first seen on the stairs. The officer removed five live rounds from the Smith & Wesson .38-caliber blue steel revolver, and took it to the kitchen to catalog. The firearm was later determined to be operable and was estimated to have a value of $400 to $500. The house had two bedrooms on the first floor: one was furnished with a bed and dresser, and the other contained racks of clothing and a treadmill. Defendant's 20-year-old son was found in the furnished bedroom on the first floor.

Once the house was secured, the investigative team entered to conduct a search pursuant to the warrant. Searching the upstairs bedroom, officers found evidence that the defendant resided there, and no evidence that anyone else did. They found mail addressed to JaJuan Lewis at 16500 Collingham, including two pieces of mail postmarked in September and October 2011, respectively. There was also mail addressed to Jay Lewis at the Collingham address. Other evidence obtained from the upstairs bedroom included the defendant's birth certificate, his resume, other papers bearing his name, and a money clip with his initials on it. A large quantity of men's clothing and shoes were found in the upstairs bedroom, as well as photographs in which the defendant could be seen wearing some of the items. Lewis was arrested after a criminal-record check revealed that he had three prior felony convictions. In statements to police, Lewis

claimed that he was just moving in, that his bedroom was downstairs, and that several other people were living at the Collingham address.

Defendant was charged with one count of being a felon in possession of a firearm. The initial indictment was dismissed without prejudice, and a second indictment was returned in February 2013. At trial, the defense stipulated that Lewis had previously been convicted of a felony and that the firearm, manufactured outside Michigan, had traveled in and affected interstate commerce. The only issue was whether Lewis had knowingly possessed the firearm in question. The government rested, defendant's motion for judgment of acquittal was denied, and the defense rested without calling any witnesses. The jury returned a verdict of guilty, and Lewis was sentenced to a 63-month term of imprisonment. This appeal followed.

## II.

We review the denial of a motion for judgment of acquittal *de novo*, and must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). In making this determination, "we do not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005) (citation omitted). Because Lewis stipulated that he had a prior felony conviction and that the specified firearm had traveled in or affected interstate commerce, the only issue is whether the evidence was sufficient to establish that Lewis knowingly possessed the firearm. *See Campbell*, 549 F.3d at 374.

As the jury was instructed, possession of a firearm under § 922(g)(1) may be based on either actual or constructive possession and may be proved by direct or circumstantial evidence.

*Id*. "Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant 'does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id*. (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)). "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (citation omitted).

Defendant argues that the jury could not reasonably have inferred that he knew the firearm was in the upstairs bedroom because two of the three officers who conducted the sweep overlooked the firearm in the trash can. But, the third officer testified that he spotted the firearm pointing down in the small waste basket by the bed within seconds of completing the sweep. The upstairs of the home consisted of only one room—a bedroom with a large bed that appeared to have been slept in—and Lewis was observed coming down from upstairs in boxer shorts and a t-shirt. No one else was found upstairs, and the evidence tied Lewis, and no one else, to the upstairs bedroom. Mail addressed to Lewis at the Collingham address, his birth certificate, his resume, and other papers found in the upstairs bedroom supported an inference that he had dominion and control over the area where the firearm was found. Not only was men's clothing found in the upstairs bedroom, but there were photographs of defendant wearing some of the items. To further establish constructive possession, the government offered limited testimony from two probation officers to whom defendant reported to establish: (1) that he was living there, and only there, as of June 2011; and (2) that only he and his son were living there as of November 2011. Drawing all reasonable inferences in the government's favor, the evidence is more than sufficient to lead a rational trier of fact to conclude that Lewis constructively

possessed the firearm.  *See United States v. Johnson*, _F. App'x _ , 2016 WL 4088739 (6th Cir.

Aug. 2, 2016) (affirming felon-in-possession conviction on a constructive-possession theory).

### III.

Defendant argues that testimony from the two probation officers should have been

excluded under Fed. R. Evid. 403 and 404(b).  We review the district court's admission or

exclusion of evidence based on determinations regarding relevance and prejudice for abuse of

discretion.  *See United States v. Hanna*, 661 F.3d 271, 288 (6th Cir. 2011); *United States v. Bell*,

516 F.3d 432, 440 (6th Cir. 2008).  Moreover, any error in the admission of this evidence will

not require a new trial unless the error affects the defendant's substantial rights.  *See Hanna*,

661 F.3d at 288; FED. R. CRIM. P. 52(a).

Defendant's reliance on the three-part test for admission of Rule 404(b) evidence is

misplaced because the testimony from the probation officers did not include any evidence of

defendant's "other crimes, wrongs, or acts."  *See Bell*, 516 F.3d at 440-41.  That is, neither

probation officer was asked about, or testified concerning, the defendant's conduct or

convictions for which he was under supervision.  In fact, defense counsel's objection did not rely

on Rule 404(b).

There is no question that the probation officers' testimony was relevant—*i.e.*, having

"any tendency to make the existence of any fact that is of consequence to the determination of

the action more probable or less probable than it would be without the evidence."  FED. R. EVID.

401.  And, we reject defendant's assertion on appeal that the probative value of the federal

probation officer's testimony was illusory because it was duplicative of the state probation

officer's testimony.  According to Officer Horton, defendant told him that he was moving to the

Collingham address in April 2011, and that he was living there, and only there, as of June 2011.

Officer Dunn testified that the defendant, who was required to report where and with whom he was residing, advised her that only he and his son were living at the Collingham address in November 2011. The probative value of the testimony is apparent from our analysis of defendant's challenge to the sufficiency of the evidence, and is underscored by the fact that the defendant would not enter into a stipulation to be offered in lieu of the probation officers' testimony.

Nor are we persuaded that the probative value of this evidence was "substantially outweighed" by the danger of unfair prejudice because it would allow the jury to infer that he had more than one prior conviction and convict him based on a propensity to commit crimes. *See* FED. R. EVID. 403. The record shows that the probation officers gave no indication of what caused defendant to be under their supervision and avoided any reference to a prior conviction. Further, the potential prejudice from this evidence was substantially lessened by the fact that the defendant was charged with being a felon in possession of a firearm and stipulated that he had previously been convicted of a felony. *See United States v. Griffin*, 476 F. App'x 592, 598 (6th Cir. 2011). The district court did not abuse its discretion by allowing the probation officers' limited testimony over defense counsel's objection. Moreover, any error in admitting the evidence did not affect defendant's substantial rights. *See United States v. Whittington*, 455 F.3d 736, 740 (6th Cir. 2006) ("An error affects a defendant's substantial rights if it is likely to have had any substantial effect on his conviction." (citation omitted)).

**AFFIRMED.**