12-2687-cr
United States v. James

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of April, two thousand thirteen.

Present:     BARRINGTON D. PARKER,
             SUSAN L. CARNEY,
                  *Circuit Judges*,
             JED S. RAKOFF,
                  *District Judge*.*

---

UNITED STATES OF AMERICA,

    *Appellee*,

     v.                                    No. 12-2687-cr

MICHAEL JAMES,

    *Defendant-Appellant*,

and

VINCENT LAWRENCE,

    *Defendant*.

---

\* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

Appearing for Appellant:        Jane Fisher-Byrialsen, Fisher, Byrialsen & Kreizer
                                PLLC, New York, NY.

Appearing for Appellee:         Kan M. Nawaday (Hadassa Waxman, Jennifer G.
                                Rodgers, *on the brief*), Assistant United States
                                Attorneys, *for* Preet Bharara, United States
                                Attorney for the Southern District of New York.

Appeal from the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., Judge). **ON CONSIDERATION WHEREOF,** it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED**.

Defendant-Appellant Michael James appeals from a June 28, 2012 judgment of conviction entered by the District Court (Patterson, J.) following a four-day jury trial. The jury convicted James of one count of conspiracy to distribute and possess with intent to distribute 100 kilograms and more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

The indictment alleged that from sometime in 2000 through his arrest on December 2, 2010, James and others – including a co-conspirator later identified as Vincent Lawrence – conspired to distribute more than 100 kilograms of marijuana in the greater New York area. As overt acts, the indictment alleged that (1) on August 30, 2004, Lawrence possessed approximately $650,000 in cash in the vicinity of East Gun Hill Road in the Bronx; (2) on December 22, 2005, James possessed approximately five pounds of marijuana in the vicinity of Edson Avenue in the Bronx; (3) on December 2, 2010, James possessed approximately five pounds

2

of marijuana in a livery cab in the Bronx; and (4) on December 2, 2010, Lawrence possessed approximately twenty-five pounds of marijuana in the vicinity of Hicks Avenue in the Bronx.

Several months before trial, the Government offered James an agreement pursuant to which he would plead guilty to the lesser included offense of conspiring to distribute more than fifty kilograms of marijuana – a charge which, unlike the 100 kilogram conspiracy alleged in the indictment, did not carry a mandatory minimum sentence. At a plea hearing held on January 10, 2012, James attempted to allocute to his participation in the conspiracy referred to in the proposed plea agreement, but after finding James's admissions unclear and inconsistent, the District Court refused to accept his plea and continued the hearing so that James could consult with his attorney. The following day, James returned to court with a new attorney and stated that he no longer wished to plead guilty and had decided to proceed to trial. In February 2012 and again in March 2012, the Government offered plea agreements similar to the January agreement in that they did not include a mandatory minimum sentence, but James rejected both offers and proceeded to trial.

At trial, the Government adduced significant evidence showing the existence of the conspiracy alleged in the indictment. For example, Lawrence testified that he and James purchased large quantities of marijuana (sometimes as much as eighty pounds, three times per week) from a rotating cast of suppliers, shared several "stash houses" where they stored and packaged their marijuana for resale, and referred pound-weight marijuana customers to each other for a commission. A

3

witness named Andre Davidson testified about an occasion in 2005 on which he sold to James between eight and ten pounds of marijuana that Davidson had stolen from a drug dealer during an armed robbery in Yonkers. An agent with the Drug Enforcement Administration testified about the August 2004 seizure of approximately $650,000 from a vehicle in which James's alleged co-conspirator Vincent Lawrence was riding (the first overt act alleged in the indictment), and the December 2005 arrest of James and seizure from his home of approximately five pounds of marijuana (the second overt act alleged in the indictment). A detective with the New York City Police Department testified about James's December 2010 arrest and the simultaneous seizure of approximately five pounds of marijuana from the knapsack of James's twelve-year-old daughter, who was with him when he was arrested (the third overt act alleged in the indictment). In addition, another law enforcement agent testified that, following James's December 2010 arrest, James admitted that he had sold ten to twenty pounds of marijuana weekly since 2000; stated that he had recently begun referring customers to Lawrence; and directed agents to Lawrence's home, where James said they would find between fifty and 100 pounds of marijuana.

The jury convicted James of one count of conspiracy to distribute and possess with intent to distribute 100 kilograms and more of marijuana (the crime alleged in the indictment), and the District Court sentenced him principally to seventy-eight months' imprisonment.

On appeal, James contends that the District Court erred first by refusing to accept his attempted guilty plea in January 2012. He also contends that the

4

District Court erred at trial by admitting evidence concerning: first, his possession of sizable quantities of marijuana in December 2005 and December 2010; second, Davidson's participation in an armed robbery; and third, the discovery of marijuana in his twelve-year-old daughter's knapsack. We address – and reject – each of James's arguments in turn.

## A. The District Court's Refusal to Accept James's Guilty Plea

We review a district court's decision not to accept a guilty plea for abuse of discretion. United States v. Severino, 800 F.2d 42, 46-47 (2d Cir. 1986).

Under Federal Rule of Criminal Procedure 11, a district court may enter judgment on a guilty plea only if, among other things, it determines "that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[I]f the court has reasonable grounds for believing that acceptance of the plea would be contrary to the sound administration of justice, it may reject the plea." Severino, 800 F.2d at 46. One such ground "is the defendant's failure to satisfy the court that there is a factual basis for the plea." Id. (internal quotation marks and brackets omitted). Indeed, as we recently explained, "[i]t is error for the court to find that a factual basis exists when the defendant actively contests a fact constituting an element of the offense in the absence of circumstances warranting the conclusion that the defendant's protestations are unworthy of belief." United States v. Culbertson, 670 F.3d 183, 190 (2d Cir. 2012) (internal quotation marks omitted).

The transcript of the January 10, 2012 plea hearing reveals that James gave inconsistent and unclear answers to the District Court's questions about the nature and scope of the charged conspiracy. For example, James answered "yes" to the

5

question, "[D]id you knowingly and intentionally agree with Mr. Lawrence to distribute and possess with intent to distribute . . . 50 kilograms and more of marijuana?", but when the District Court asked James what he had done in furtherance of the conspiracy, James at first answered only that he "had five pound[s] of marijuana in a bag." App. 34. In addition, when it came to the sources of his supply, James first denied that Lawrence provided him with marijuana, but later stated that he obtained marijuana from Lawrence "[e]very other week." App. 40. James's statements about the quantity of marijuana involved in the conspiracy were equally muddled. At one point, he stated that he purchased five kilograms at a time from suppliers other than Lawrence, but when the District Court asked him whether he "always bought at least five kilograms at a time," James answered, "Not really." App. 37. As to the amount of marijuana supplied to him by Lawrence, James stated that he "may" have received a total of "between four and ten" pounds, but when the District Court asked, "How much did you get every other week?", James responded, "I don't know what to say." App. 40. As these examples demonstrate, James's allocution was confused as to several essential elements of the charged conspiracy. Given this record, the District Court did not abuse its discretion in declining to accept James's guilty plea.[1] See Fed. R. Crim. P. 11(b)(3); Severino, 800 F.2d at 46.

---

[1] Even were we to find an abuse of discretion, however, James still would not prevail. As noted above, the Government's plea offer remained open at least through January 11, 2012, when James appeared in court with a new attorney and stated that he intended to proceed to trial. Having affirmatively rejected the Government's offer, James likely waived his right to claim its benefit. See United States v. Gomez, 617 F.3d 88, 92 (2d Cir. 2010) ("Waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks and brackets omitted)).

6

## B.    The District Court's Evidentiary Rulings

We review a district court's evidentiary rulings for abuse of discretion,

United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009), and will reverse "only if

the government is unable to demonstrate that the error was harmless, that is, that

the error did not affect the defendant's substantial rights or influence the jury's

verdict," United States v. Madori, 419 F.3d 159, 168 (2d Cir. 2005) (quoting United

States v. Tubol, 191 F.3d 88, 96-97 (2d Cir. 1999)).

James's evidentiary challenges center on Federal Rule of Evidence 404(b),

which provides that "[e]vidence of a crime, wrong, or other act is not admissible to

prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character." Fed. R. Evid. 404(b). Such evidence is,

however, admissible for other purposes, "such as proving motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident." Id. Our Court follows the "inclusionary" approach, pursuant to which we

admit "all 'other act' evidence that does not serve the sole purpose of showing the

defendant's bad character and that is neither overly prejudicial under Rule 403 nor

irrelevant under Rule 402." United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011).

James first argues that the District Court erred in admitting evidence of his

possession of five pounds of marijuana on December 22, 2005, and five pounds of

marijuana on December 2, 2010. According to James, this evidence should have

been excluded under Rule 404(b). We disagree and discern no error here. Rule

404(b) "bars the admission of a defendant's *uncharged* crimes to prove propensity to

commit the crime charged." United States v. Concepcion, 983 F.2d 369, 392 (2d Cir.

7

1992) (emphasis added); see also Curley, 639 F.3d at 56 (noting that Rule 404(b) governs the admissibility of "'crimes, wrongs or acts' *other than those charged in the indictment*" (emphasis added)).  An act "that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."  Concepcion, 983 F.2d at 392.  James's possession of five pounds of marijuana on December 22, 2005, and December 2, 2010, were charged as overt acts in the indictment.  Accordingly, evidence of James's possession of marijuana on these occasions was not subject to the strictures of Rule 404(b).  Id.; see also United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994).  Nor has James identified any "unfair prejudice" that would render evidence of his possession of sizable quantities of marijuana in 2005 and 2010 – during the pendency of the charged conspiracy – inadmissible under Federal Rule of Evidence 403.  Cf. Old Chief v. United States, 519 U.S. 172, 180-81 (1997).

James next argues that the District Court erred in allowing Andre Davidson to testify about his 2005 sale to James of eight to ten pounds of stolen marijuana. We again disagree and discern no abuse of discretion in the District Court's ruling. Davidson's testimony was direct evidence of the charged conspiracy because it tended to show that James knowingly dealt in quantities of marijuana consistent with a drug trafficking operation and served as a fence for large amounts of stolen narcotics.  Where, as here, "other-act evidence is relevant to prove a material fact other than the defendant's propensity," such evidence "is not barred by Rule

404(b)."[2] Concepcion, 983 F.2d at 392. In addition, although the details of Davidson's acquisition of the marijuana were admittedly dramatic, any error in admitting testimony about the robbery itself was harmless for at least two reasons. First, Davidson testified unequivocally that James played no role whatsoever in planning or carrying out the robbery. Indeed, Davidson explained that the first time he met James was when he sold James the stolen drugs. Second, the evidence against James was significant. As explained above, that evidence consisted principally of Vincent Lawrence's detailed (and corroborated) testimony, as well as James's own post-arrest statements admitting to large-scale drug dealing and linking himself to Lawrence.

Finally, James argues that the District Court erred in admitting testimony that he stored five pounds of marijuana in his twelve-year-old daughter's knapsack, principally because evidence of his daughter's age was unfairly prejudicial. This argument, too, is unavailing. On the one hand, James's placement of a large amount of marijuana in his young daughter's knapsack was probative of the charged offense because it tended to show a level of secrecy and evasion consistent with his knowing and intentional participation in a large-scale drug trafficking conspiracy. On the other hand, at no point did the Government suggest that James involved his daughter in his criminal activities beyond this one occasion; nor did the Government suggest that James ever placed his daughter in danger. On balance,

_____

[2] We also note that at the conclusion of the Government's direct examination of Davidson, the District Court instructed the jury that it had "allow[ed] this testimony only insofar as it may show that . . . the defendant had knowledge of marijuana insofar as it may show that he deals in marijuana, not insofar as it shows that he is a member of the conspiracy that the defendant is charged with by the government."

9

we cannot conclude that the District Court abused its discretion in allowing testimony about the age of James's daughter or his use of her knapsack to store marijuana. See Fed. R. Evid. 403.

We have considered James's remaining arguments and find them to be unavailing. Accordingly, the judgment of the district court is **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10