RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-3904

JOEY D. WISEMAN, JR.,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:17-cr-00464-1—Donald C. Nugent, District Judge.

Decided and Filed: July 26, 2019

Before: MOORE, COOK, and THAPAR, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Marisa L. Serrat, Cleveland, Ohio, for Appellant. Scott Zarzycki, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Defendant Joey Wiseman appeals his conviction and sentence for being a felon in possession of a firearm and ammunition and possession of cocaine with intent to distribute. In the early hours of August 4, 2017, Wiseman intercepted a would-be-robber entering his home through a window, disarmed the intruder, and shot him with a gun already in Wiseman's possession. Wiseman subsequently placed the gun in a safe containing individual baggies of drugs in a vehicle parked in his driveway prior to

cooperating with the police who investigated the shooting. Wiseman now argues that the First Step Act of 2018 renders his sentencing improper, that he was entitled to a jury instruction on the justification defense, and that testimony about his parolee status was improperly admitted. We reject his challenges and **AFFIRM** his conviction and sentence.

## I. BACKGROUND

**A. Factual Background**

On August 4, 2017, at around 6:30 a.m., several Elyria Police Department officers were dispatched to 201 George Street in Elyria, Ohio and observed blood on the lower part of the frame of an open window of the home. R. 74 (Trial Tr. at 104–07) (Page ID #426–29). Wiseman soon appeared from between the house and a GMC Yukon parked in the driveway. He held his hands up and informed the officers that there was a handgun laying in the driveway. *Id.* at 113, 222 (Page ID #435, 544). The handgun was black and stainless steel. *Id.* at 114 (Page ID #436). The officers entered the home and observed a teenaged male, Jaymone Whitaker, in a pool of blood on the living-room floor close to the window with the bloody frame; he appeared to have been shot multiple times. *Id.* at 121 (Page ID #443). Paramedics took Whitaker to the hospital, and officers brought Wiseman to the police station. *Id.* at 124–25, 153 (Page ID #446–47, 475).

The police collected the gun, a loaded Taurus PT 709 9mm, from the driveway. They collected a package with approximately .3 grams of white powder containing cocaine from the kitchen floor and several 9mm Luger shell casings from the living room, where there were signs of a struggle. *Id.* at 186–87, 224 (Page ID #508–09, 546). They also observed that there were surveillance cameras on the outside of the home and a monitor in the living room that displayed the security footage.

At the police station, officers swabbed Wiseman's hands for gun residue and collected $4,949.00 in cash from Wiseman's person. *Id.* at 154, 190–91 (Trial Tr. at 476, 512–13). Wiseman was Mirandized, and he indicated that he understood his rights and agreed to talk with the police officers. R. 75 (Trial Tr. at 325) (Page ID #647). The interview was recorded on video. *Id.* at 326 (Page ID #648).

Wiseman informed the police that he had been awoken by a voice, used the restroom, came back, sat down on the couch, and then, aided by his surveillance monitor, he saw Whitaker "coming up to his window, peeking in, wearing the mask." *Id.* at 337, 360 (Page ID #659, 682). Wiseman stated that he had knocked Whitaker's gun out of his hand as Whitaker entered the home and then Wiseman shot Whitaker with a black Lorcin gun that Wiseman had in the house with him prior to the robber's entry. *Id.* at 338 (Page ID #660). Wiseman subsequently placed the black Lorcin gun in a safe in the back of the Yukon parked in the driveway. *Id.* at 335 (Page ID #657). Wiseman admitted that between five and twenty-five grams of cocaine were also inside of the safe. *Id.* at 333, 341–42 (Page ID #655, 663–664). Wiseman stated that he had not called 9-1-1 after shooting Whitaker, but rather Wiseman's first response had been to gather his money and other things prior to calling the authorities. *Id.* at 334 (Page ID #656).

Wiseman provided the officers with the combination to the safe in the Yukon. *Id.* at 342 (Page ID #664). The officers obtained a search warrant, towed the vehicle to the police station, and searched the safe. *Id.* at 343 (Page ID #665). It contained the black Lorcin 9mm handgun with a defaced serial number, 11 individual bags of similar quantities of a white powder containing cocaine, a bag of cutting material, and a shoebox containing a digital scale, spoon, scissors, and baggies. R. 74 (Trial Tr. at 158–60) (Page ID #480–82); R. 75 (Trial Tr. at 343) (Page ID #665). The safe also contained documents bearing Wiseman's name. R. 75 (Trial Tr. at 343–44) (Page ID #665–66).

The officers obtained Wiseman's consent to view the surveillance video from the home. *Id.* at 346 (Page ID #668). It showed Whitaker entering the home through the window and holding a black and silver gun. *Id.* at 350 (Page ID #672). It subsequently showed Wiseman walking outside the home. *Id.* at 352–53, 355 (Page ID #674–75, 677).

## B. Procedural History

On November 8, 2017, Wiseman was indicted on three counts stemming from the August 4 events. R. 1 (Indictment) (Page ID #1–2). Count 1 charged him with possession with intent to distribute approximately .28 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). Count 2 charged him with possession with intent to distribute approximately 11.28 grams of

cocaine in violation of the same statute.  Count 3 charged him with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924.

On January 23, 2018, the government filed an information under 21 U.S.C. § 851(a) stating the previous felony drug offense convictions that it intended to rely upon in enhancing his sentence under 21 U.S.C. § 841(b)(1)(C).  R. 18 (Information) (Page ID #57–59).  These convictions were for:  (1) Possession of Cocaine in 2016; (2) Illegal Conveyance of Drugs of Abuse onto the Grounds of a Specified Government Facility, Trafficking in Drugs and Possession of Drugs in 2015; (3) Trafficking in Drugs in 2014; and (4) Trafficking in Cocaine in 2012.  On June 8, 2018, Wiseman filed a proposed jury instruction on a justification defense. R. 47 (Def.'s Proposed Jury Instruction) (Page ID #201–02).

Wiseman's jury trial commenced on June 12, 2018.  R. 50 (Trial Minutes) (Page ID #206).  At trial, Special Agent Eric French testified about his involvement in the case.  When asked how he had come to be involved in the case, he testified that he got "a call from Adult Parole Authority," specifically Parole Officer Daniel Riley.  R. 74 (Trial Tr. at 259) (Page ID #581).  Wiseman objected to this testimony and the court instructed the government to move on. *Id.* at 259–60 (Page ID #581–82).  French went on to testify that his role in the case involved attempting to trace the Lorcin gun.  *Id.* at 260–68 (Page ID #582–90).  At the close of trial, Wiseman reiterated his request for a jury instruction on a justification defense, and the district court heard oral argument from both sides and ultimately declined to issue such an instruction. R. 75 (Trial Tr. at 375–82) (Page ID #697–704).  Wiseman moved for a judgment of acquittal on all counts under Federal Rule of Criminal Procedure 29; the court denied his motion.  R. 75 (Trial Tr. at 409) (Page ID #731).

Wiseman was acquitted of Count 1 and convicted of Counts 2 and 3.  R. 52 (Jury Verdict on Count 1) (Page ID #208); R. 53 (Jury Verdict on Count 2) (Page ID #210); R. 54 (Jury Verdict on Count 3) (Page ID #212).  The jury found via a special verdict form that Wiseman possessed the Lorcin pistol with an obliterated serial number and ammunition.  R. 55 (Special Verdict Form) (Page ID #214).

The presentence report ("PSR") calculated the adjusted offense level, after grouping, to be 28. PSR at 5. The amount of drugs and the government's filing of an information under 21 U.S.C. § 851(a) increased the maximum term of imprisonment from 20 to 30 years. 21 U.S.C. § 841(b)(1)(C). The PSR then applied the career offender enhancement under § 4B1.1(b), based on the fact that the offense of conviction was a felony controlled substance offense and Wiseman's having at least two prior felony convictions for a controlled substance offense: (1) Trafficking in Cocaine in 2012; (2) Trafficking in Drugs in 2014; and (3) Trafficking in Drugs in 2015. This meant that the offense level increased to 34. PSR at 5. The resulting guideline range was 262 to 327 months of imprisonment. *Id.* at 16.

On September 19, 2018, the district court imposed a sentence of 262 months for Count 2 and 120 months for Count 3, to run concurrently. R. 63 (Minutes of Proceedings) (Page ID #292); R. 64 (Criminal Judgment at 2) (Page ID #294). Wiseman timely filed his notice of appeal. R. 65 (Notice of Appeal) (Page ID #301).

## II. DISCUSSION

Wiseman advances four claims of error on appeal. We address and reject each one in turn.

### A. First Step Act and qualifying convictions under 21 U.S.C. §§ 841(b)(1)(C) & 851(a)

We review de novo the sufficiency of an information filed under 21 U.S.C. § 851(a) to support the enhancement of a statutory penalty. *United States v. Pritchett*, 496 F.3d 537, 541 (6th Cir. 2007).

Wiseman argues that he has not committed any "serious drug felonies" as defined by the First Step Act of 2018, and therefore that he is not eligible for the sentencing enhancement under 21 U.S.C. §§ 841(b)(1)(C) and 851(a). The government counters that the First Step Act does not apply to Wiseman both because he was sentenced before its effective date and also because the First Step Act did not alter 21 U.S.C. § 841(b)(1)(C), the subsection under which Wiseman was convicted.

Under 21 U.S.C. § 841(b)(1)(C), the statutory maximum penalty increases from twenty to thirty years of imprisonment if the perpetrator has a prior conviction for a felony drug offense.

The government must file an information pursuant to 21 U.S.C. § 851(a) informing the defendant and court of the defendant's qualifying prior conviction or convictions. Here, the government filed its January 23, 2018 notice informing Wiseman and the court that it would rely on three of Wiseman's prior felony drug offense convictions to seek the enhanced penalty.

Wiseman's First Step Act argument fails for both independent reasons advanced by the government. First, the First Step Act is largely forward-looking and not retroactive, applying only where "a sentence for the offense has not been imposed as of [the] date of enactment." Pub. L. No. 115-391, 132 Stat. 5194, § 401(c). Section 404 of the Act makes retroactive only certain statutory changes pertaining to threshold crack cocaine weights triggering mandatory minimum sentences that were enacted under the Fair Sentencing Act of 2010. *See* Pub. L. No. 115-391, 132 Stat. 5194, § 404(b); *see also United States v. Potter*, 927 F.3d 446, 455 (6th Cir. 2019) (noting that § 404 of the First Step Act applies retroactively); *United States v. Jones*, 767 F. App'x 475, 476 (4th Cir. 2019) (per curiam) (noting the process to attain retroactive application of the Fair Sentencing Act under the First Step Act); *United States v. Bedford*, 770 F. App'x 260, 262 (7th Cir. 2019) (discussing the limited retroactivity of the First Step Act). This provision does not pertain to Wiseman's case. The First Step Act had an effective date of December 21, 2018, but Wiseman was sentenced on September 19, 2018. R. 63 (Minutes of Proceedings) (Page ID #292); R. 64 (Criminal Judgment at 2) (Page ID #294). He therefore cannot benefit from the First Step Act as he was sentenced prior to its effective date and its limited retroactivity does not apply to him.

Second, the First Step Act did not alter the definition of "felony drug offense[s]" that serve as qualifying convictions under 21 U.S.C. § 841(b)(1)(C). It did, however, impact 21 U.S.C. § 841(b)(1)(A) & (B), changing qualifying convictions under these sections from "felony drug offense[s]" to "serious drug felon[ies]" as defined by the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194, § 401(a)(2)(A) & (B); *see Potter*, 927 F.3d at 455 (briefly discussing the impact of the First Step Act on 21 U.S.C. § 841(b)(1)). A felony drug offense, as defined in 21 U.S.C. § 802(44) is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or

stimulant substances." A "serious drug felony" under the First Step Act and 21 U.S.C. § 802(57) covers a smaller set of crimes, offenses "described in [18 U.S.C. §] 924(e)(2) for which-- (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." Pub. L. No. 115-391, 132 Stat. 5194, § 401(a)(1); 21 U.S.C. § 802(57).

Because Wiseman was convicted under 21 U.S.C. § 841(b)(1)(C), not § 841(b)(1)(A) or (B), the First Step Act's narrowing of qualifying convictions to serious drug felonies rather than felony drug offenses under those provisions would not impact him, even if he had been sentenced after the First Step Act's effective date. We therefore reject Wiseman's first claim of error.

## B. Justification jury instruction

Next, Wiseman argues that the district court erred by refusing to instruct the jury on his proposed justification defense. The government argues that the district court properly rejected the proposed instruction because Wiseman did not produce evidence that would have supported each element of the defense.

We generally review challenges to jury instructions for an abuse of discretion, assessing the instructions in their entirety "to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Williams*, 612 F.3d 500, 506 (6th Cir. 2010) (quoting *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005)). However, "[w]here a defendant claims an affirmative defense, and that defense finds some support in the evidence and in the law, the defendant is entitled to have the claimed defense discussed in the jury instructions." *United States v. Clark*, 485 F. App'x 816, 818 (6th Cir. 2012) (quoting *United States v. Johnson*, 416 F.3d 464, 467 (6th Cir. 2005)). In such circumstances, "[r]efusal to give an accurate jury instruction is reversible if it impairs the defendant's theory of the case and is not covered adequately by the instructions given." *Id.* (quoting *United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994)).

Wiseman appears to suggest that he was entitled to a justification instruction if he made out only a prima facie case for that defense. Appellant Br. at 29–30. To be clear, a prima facie

case for the justification defense entitles the defendant to present evidence to support it, but when the defendant requests such an instruction at the close of evidence, the instruction is proper only if he has "produce[d] evidence upon which a reasonable jury could conclude by a preponderance of the evidence" that the defense was established. *United States v. Ridner*, 512 F.3d 846, 849–50 (6th Cir. 2008) (discussing the different questions asked at different stages of the litigation); *see also United States v. Kemp*, 546 F.3d 759, 765 (6th Cir. 2008); *United States v. Sloan*, 401 F. App'x 66, 69 (6th Cir. 2010).

In the Sixth Circuit, the defendant advancing a justification defense must prove each of five requirements set out in *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990):

(1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

(2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;

(5) that the defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Sloan*, 401 F. App'x at 69 (quoting *Riffe*, 28 F.3d at 569). "The justification defense 'arises only in "rare situations" and "should be construed very narrowly."'" *Id.* (quoting *Kemp*, 546 F.3d at 765).

In *United States v. Ridner*, in analyzing an assertion of the justification defense in a felon-in-possession case, we quoted the Seventh Circuit's observation that "[t]he defense of necessity [or justification] will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened." 512 F.3d at 849 (quoting *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996)). In *United States v. Sloan*, for example, we determined that the district court had properly

refused to instruct the jury on the justification defense where the ex-felon defendant argued that he was justified in possessing a weapon because of "bizarre occurrences" around the mobile home where he was living, including "a man with an assault rifle standing on the property, looking at the mobile home," and then "disappear[ing] into the woods," unlawful and mysterious spraying of chemicals, and the deaths of animals on the property. 401 F. App'x at 68–69. We found these strange occurrences insufficient to establish the first *Singleton* requirement. *Id.* at 69. We further concluded that the defendant could not meet the fifth *Singleton* requirement because he maintained the gun at his residence for ten days and "there was no 'imminent' or 'impending' threat." *Id.* at 70.

Wiseman similarly has failed to show evidence of at least the first and fifth *Singleton* requirements. First, Wiseman was not "under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury" when he first possessed the gun with which he shot Whitaker. *Sloan*, 401 F. App'x at 69 (quoting *Riffe*, 28 F.3d at 569). Wiseman possessed the gun and had it accessible long before he observed the would-be-robber's entry; he did not begin to possess it only when he learned of the imminent robbery. To hold that a situation such as this could give rise to a justification defense would be to authorize all felons continually to possess guns within their homes on the off-chance that they might one day be burglarized. Second, Wiseman clearly did "maintain the illegal conduct . . . longer than absolutely necessary." *Id.* (quoting *Riffe*, 28 F.3d at 569). After defending himself against Whitaker, he stashed the gun he had used in a safe to which he possessed the combination and in which he maintained other contraband, rather than immediately relinquishing it. A justification defense could not be supported by the facts here, and accordingly we affirm the district court's refusal to instruct the jury on it.

## C. Suggestion of Wiseman's status as a parolee

Wiseman argues that he was prejudiced by Officer Eric French's testimony, which suggested to the jury that Wiseman was a parolee. The government responds that French's testimony did not make clear that Wiseman was a parolee and that any error in the admission of this testimony was harmless.

"We review the district court's admission or exclusion of evidence for an abuse of discretion." *United States v. Ayoub*, 498 F.3d 532, 547 (6th Cir. 2007). Erroneous admissions of evidence by the district court are "subject to harmless error analysis, and it is well settled that an error which is not of constitutional dimension is harmless 'unless it is more probable than not that the error materially affected the verdict.'" *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir. 1998) (quoting *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993)).

We need not decide whether the district court abused its discretion in allowing French to relate that he had been alerted to the case by the Adult Parole Authority because any error was harmless.[1] "[W]here the government is required to prove as an element of the offense that the defendant has previously committed a felony, as in a [felon-in-possession] prosecution, the potential for prejudice [from the jury hearing evidence of parole status] is substantially lessened." *United States v. Griffin*, 476 F. App'x 592, 598 (6th Cir. 2011) (quoting *United States v. Griffin*, 389 F.3d 1100, 1103–04 (10th Cir. 2004)) (alterations in original). In *United States v. Griffin*, we determined that a police officer's revelation that the defendant was a parolee in explaining why no search warrant was required to search his home was harmless error. *Id.* at 597–98.

Here, as in *Griffin*, "[t]he jury was already well aware that the defendant had a felony conviction because [he] was being prosecuted under 18 U.S.C. § 922(g)(1), which prohibits convicted felons from possessing firearms [and ammunition]." *Id.* at 598. Wiseman stipulated that he had been convicted of crimes punishable under Ohio law with a term of imprisonment of over one year. R. 75 (Trial Tr. at 397) (Page ID #719). This stipulation was read to the jury, meaning that the jury would have learned that Wiseman had past involvement with the criminal justice system even without French's comment. The evidence against Wiseman was also overwhelming. Any error in the admission of French's testimony regarding his communication with the parole officer was harmless.

---

[1]We do note, however, that the district court did not allow this testimony to go on for long and responded to Wiseman's objections immediately by instructing the government to "[p]ut another question" and "[m]ove on to something else." R. 74 (Trial Tr. at 259–60) (Page ID #581–82).

**D. Career offender enhancement**

Finally, Wiseman argues that his prior felony controlled substance convictions should not serve as qualifying offenses for U.S.S.G. § 4B1.1's career offender enhancement because he served less than a year of imprisonment for each conviction; he claims that the First Step Act should inform our analysis. He essentially asks us to replace the definition of a qualifying offense under the career offender Guideline with the definition of a "serious drug felony" from the First Step Act. The government counters that the First Step Act did not impact this Guideline enhancement and that Wiseman's offenses qualified because they were punishable by a term of imprisonment exceeding one year.

We review de novo the legal question of whether a conviction is a qualifying offense for a career offender sentencing enhancement. *United States v. Montanez*, 442 F.3d 485, 488 (6th Cir. 2006).

The government is correct that the First Step Act did not affect the definition of offenses that qualify for career offender status under U.S.S.G. § 4B1.1. Pub. L. No. 115-391, 132 Stat. 5194. It is not the role of this court to alter the Guidelines' content. That is the province of the Sentencing Commission.

> As it stands, U.S.S.G. § 4B1.1 provides:
>
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Under the Guidelines, a controlled substance offense is

> an offense under federal or state law, *punishable* by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute or dispense.

U.S.S.G. § 4B1.2(b) (emphasis added). Wiseman does not argue that he was not at least 18 years old when he was convicted of the qualifying offenses, that the offense of conviction is not a

controlled substance offense, that the designated prior felony convictions were not for controlled substance offenses, or that they were not *punishable* for a term exceeding one year, even if he himself did not actually *serve* more than one year for each conviction. *See* U.S.S.G. § 4B1.2 app. n.1 (noting that a prior conviction need only have presented the possibility of a sentence of more than a year, "regardless of the actual sentence imposed"). We therefore reject his final claim of error.

## III.  CONCLUSION

For the reasons discussed above, we **AFFIRM** Wiseman's conviction and sentence.